Filed 4/14/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW MORRISON,<br><br>    Defendant and Appellant. | H050677<br>Santa Clara County<br>Super. Ct. No. 216087) |

Matthew Morrison was convicted of a sexually violent offense and sentenced to prison. Prior to Morrison's release from custody, the Santa Clara County District Attorney filed a petition to commit Morrison as a sexually violent predator under the Sexually Violent Predator Act (SVPA or the Act) (Welf. & Inst. Code,[1] § 6600 et seq.). After a court trial, the trial court found the petition to be true, declared Morrison to be a sexually violent predator, and committed him to the State Department of State Hospitals for an indeterminate term for treatment and confinement in a secure facility.

On appeal, Morrison contends that the trial court violated his constitutional rights by not personally advising him of his right to jury trial

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

and securing a personal waiver of that right. Morrison maintains that the SVPA's failure to require a personal jury trial advisement and waiver, unlike statutes governing trials for other types of civil commitment, violates the constitutional equal protection guarantee. The principal issue raised in this appeal is the level of scrutiny we should apply to that question.

We decide Morrison's equal protection challenge is subject to rational basis review. Because Morrison did not raise the issue in the trial court, we conditionally affirm the commitment order and remand the matter to give Morrison the opportunity to raise his equal protection claim before the trial court. We also provide guidance to the trial court on the principles it should apply when resolving Morrison's constitutional claim.

## I. PROCEDURAL BACKGROUND[2]

On May 11, 2017, the People filed a petition to commit Morrison as a sexually violent predator upon his release from prison. The petition attached evaluations from two psychologists, each of whom concluded Morrison met the statutory criteria.

On June 14, 2019, Morrison's trial counsel appeared in the trial court on his behalf, waived his personal appearance, and requested a jury trial with a time estimate of 15 days. The court set the trial for March 2020. The parties appeared for status conferences on the jury trial (with Morrison's personal appearance waived by his counsel) on December 6, 2019, January 24, 2020, and January 31, 2020.

On January 31, 2020, Morrison's trial counsel indicated that she would not be ready for the March trial date but would be "ready within the calendar

---

[2] As the facts underlying Morrison's offenses and the evidence presented at his sexually violent predator trial are irrelevant to the issues in this appeal, we do not recount them here.

year and anticipate[d] a trial date in mid[-]June." She explained "because of the nature of the sexually violent predator cases, it requires evaluators and doctors from around the state who have previously evaluated the individual to come and testify. Those doctors book out months ahead of time." She requested a trial setting date so she could have a firm trial date to "go forward for those experts."

On February 5, 2020, the parties again appeared for a status conference (with Morrison's personal appearance waived by his counsel). Morrison's trial counsel requested a trial date of mid-June and indicated they were "going to have a court trial." She stated "the department of state hospital evaluators get booked out many, many, many months in advance. [¶] So if it doesn't actually go around mid-June to mid-July, we [] might get delayed for [] many months or [a] year." The trial court replied that it could not give a definite trial date but could set it for June 1, 2020, and try and "land in the window you want to land in." Morrison's trial counsel replied that if the trial could occur any time between June 15th and mid-July, they would "be set."

The trial court and Morrison's counsel had the following exchange:

"The court: All right. And if you want to enter a jury trial waiver at some point, that'll obviously increase the options of available departments to hear.

"[Morrison's trial counsel]: Your honor, I'm happy to enter a jury trial waiver at this time.

"The court: Don't you need your client for that?

"[Morrison's trial counsel]: I will file a supplemental declaration with the court that will augment my oral declaration here. And then it'll just be

3

clear for the record when this comes up again that we don't need a full jury trial department but just a court trial.

"The court: Why don't you remind me of that when it comes up so we then take a personal waiver when your client is here.

"[Morrison's trial counsel]: Okay."

The record does not appear to contain any declaration by Morrison's counsel as to the jury trial waiver or a personal written or oral waiver by Morrison.

For reasons unexplained by the record (but perhaps related to the effects of the COVID-19 pandemic on court operations in Santa Clara County[3]), Morrison's trial did not proceed in mid-June as scheduled. The parties appeared for several trial status conferences, including on July 17, 2020, November 1, 2021, January 3, 2022, January 24, 2022, April 4, 2022, and June 27, 2022. Morrison's appearance was waived by his trial counsel, who on several occasions confirmed that Morrison's trial would be a court trial.

Morrison's trial began on August 2, 2022, and took place before the court without a jury over nonconsecutive days in August, September, and October 2022.[4] Neither the trial court nor Morrison's trial counsel referenced a jury trial waiver on the record during Morrison's trial.

---

[3] See *Rodriguez v. Superior Court* (2023) 15 Cal.5th 472, 486–489, 515.

[4] Morrison was personally present on the first day of trial, August 2, 2022. Pursuant to Morrison's trial counsel's request, after the first day of trial the trial court signed an order that Morrison would "attend future court dates via CCTV" and ordered him returned to Coalinga State Hospital. Morrison was present at the trial via video conferencing (Webex) when the trial court resumed on August 11, 2022; he was housed at Coalinga State Hospital during the trial.

On October 20, 2022, the trial court found true the petition alleging Morrison to be a sexually violent predator. The court found Morrison was convicted of a qualifying offense, that he suffers from a currently diagnosed mental disorder predisposing him to commit a criminal sexual act, and that, due to his mental disorder, Morrison is likely to reoffend in a sexually predatory fashion. The court committed Morrison to the State Department of State Hospitals for an indeterminate term for treatment and confinement. Morrison timely appealed.

In this court, Morrison raises a single constitutional claim. He concedes that the SVPA does not require that the trial court personally advise a person of his or her right to jury trial or secure a personal waiver of that right. Morrison also concedes that he did not raise his equal protection claim in the trial court. Nevertheless, Morrison maintains that his equal protection rights were violated.[5] Morrison argues that the disparate treatment afforded to sexually violent predators and other civil committees should be reviewed under strict scrutiny because "his fundamental interest in liberty is at stake."

Morrison further maintains that both he and the People "are entitled to an opportunity to prove their case at an evidentiary hearing." He requests that the commitment order be conditionally reversed and remanded for an evidentiary hearing to determine whether "California can justify the

---

[5] Morrison does not in his briefing specifically identify whether he is making his claim pursuant to the equal protection clause of the federal Constitution, the California Constitution, or both. (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) We have analyzed his claim pursuant to federal constitutional principles, as interpreted by the United States and California Supreme Courts. (See *People v. Hardin* (2024) 15 Cal.5th 834, 847, fn. 2.)

disparate treatment of alleged [sexually violent predators] that results from denying them the right to be advised of their right to a jury trial and their right to decide whether to have a jury trial."

The Attorney General responds that the rational basis standard applies to a Morrison's equal protection claim. The Attorney General also requests that the matter be remanded for an evidentiary hearing.[6] The Attorney General states that this court "should conditionally affirm the judgment and remand the case to the trial court to give [Morrison] the opportunity to raise the claim and the People an opportunity to justify the disparate treatment under a rational basis standard of review."

## II. DISCUSSION

The SVPA authorizes the involuntary civil commitment of certain convicted sex offenders, defined in the Act as "sexually violent predators" (SVP's). The Act " ' "protect[s] the public from dangerous felony offenders with mental disorders and [] provide[s] mental health treatment for their disorders." ' " (*State Department of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 344 (*State Hospitals*).) The SVPA "defines an SVP as 'a person who has been convicted of a sexually violent offense[7] against one or

---

[6] The Attorney General agrees with Morrison that his equal protection claim is not forfeited on appeal, notwithstanding Morrison's failure to raise it in the trial court.

[7] The Act defines a " '[s]exually violent offense' " as "the following acts when committed by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in the future against the victim or any other person, and that are committed on, before, or after the effective date of this article and result in a conviction or a finding of not guilty by reason of insanity, as defined in subdivision (a): a felony violation of [s]ection 261, 262, 264.1, 269, 286, 287, 288, 288.5, or 289 of, or former [s]ection 288a of, the Penal Code, or any felony violation of [s]ection 207, 209, or 220 of the Penal Code, committed

more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' " (*Ibid*.)

Court proceedings related to the SVPA begin with the filing of a petition for commitment.[8]  The petition may not be filed unless two independent professionals concur that the person meets the criteria for commitment.  (§ 6601, subds. (d), (f).)  The petition is filed with the trial court, which must order a trial if "there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release."  (§ 6602, subd. (a).)[9]  At trial, the factfinder must determine "whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release."  (*Ibid*.)  The subject of the petition is entitled to the assistance of counsel and appointment of counsel if indigent.  (§ 6603, subd. (a).)

The statutory provisions at issue in this appeal relate to the determination of whether the trial is by a jury or the court.  The Act provides the individual who is the subject of the petition is "entitled to a trial by jury."

---

with the intent to commit a violation of [s]ection 261, 262, 264.1, 286, 287, 288, or 289 of, or former [s]ection 288a of, the Penal Code."  (§ 6600, subd. (b).)

[8] The petition for commitment "shall be filed in the superior court of the county in which the person was convicted of the offense for which the person was committed to the jurisdiction of the Department of Corrections and Rehabilitation.  The petition shall be filed, and the proceedings shall be handled, by either the district attorney or the county counsel of that county." (§ 6601, subd. (i).)

[9] If the court determines the petition lacks probable cause, the court must dismiss the petition.  (§ 6602, subd. (a).)

(§ 6603, subd. (a).)[10] In addition, "The attorney petitioning for commitment under this article has the right to demand that the trial be before a jury." (*Id.*, subd. (b).) The default procedure is trial before the court: "If the person subject to this article or the petitioning attorney does *not* demand a jury trial, the trial shall be before the court without a jury." (*Id.*, subd. (f), italics added.) The Act does not require the court to advise the individual of his or her right to jury trial or specify a process for waiver of the right.

Whether the trial is before a court or jury, the burden of proof is identical. "The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct that the person be released at the conclusion of the term for which he or she was initially sentenced, or that the person be unconditionally released at the end of parole, whichever is applicable." (§ 6604.)

If the factfinder "determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of State Hospitals for appropriate treatment and confinement in a secure facility designated by the Director of State Hospitals." (§ 6604.) The statute provides for annual review of a confined individual's medical condition and consideration of conditional release or discharge from custody. (§ 6604.9.)

The SVPA is one of many civil commitment schemes in California. (See *People v. Barrett* (2012) 54 Cal.4th 1081, 1110 (*Barrett*) [listing nine civil commitment provisions]; *id.* at p. 1118 (conc. & dis. opn. of Liu, J.)

---

[10] If the trial is by jury, "[a] unanimous verdict shall be required." (§ 6603, subd. (g).)

8

["California has a panoply of statutes providing for the involuntary commitment of individuals who pose a threat to themselves and others."].) Most, like the SVPA, apply to persons who have been accused or convicted of a crime. (*Barrett*, at p. 1118. (conc. & dis. opn. of Liu, J.).)

Morrison acknowledges that, by its text, the SVPA does not include a right to a personal jury trial advisement or a personal jury trial waiver. He argues that these rights should be read into the Act by operation of constitutional law—specifically, the equal protection clause. He contends that his right to equal protection was violated by the absence of these rights in the Act but their inclusion in two other civil commitment schemes in California: those for violent offenders with mental health disorders (OMHD) (Pen. Code, § 2960 et seq.),[11] and persons found not guilty by reason of insanity (NGI) (Pen. Code, § 1026.5, subd. (b)(3)–(7).)

In two companion cases, the California Supreme Court concluded that the OMHD and NGI statutory schemes require a personal advisement of the right to jury trial and a personal waiver of that right by the individual unless the court finds substantial evidence that the individual lacks the capacity to make a knowing and voluntary waiver. (See *People v. Blackburn* (2015) 61 Cal.4th 1113, 1116 (*Blackburn*) [OMHD's] & *People v. Tran* (2015) 61 Cal.4th 1160, 1167 (*Tran*) [NGI's].)

In reaching these decisions, the California Supreme Court relied on statutory language in those statutes related to the jury trial right that differs

---

[11] These inmates were previously described as mentally disordered offenders, or MDO's. In 2019, the Legislature changed this terminology to "offender with a mental health disorder." (Pen. Code, § 2962, subd. (d)(3); Stats. 2019, ch. 9, § 7.) California courts "now refer to extension proceedings under Penal Code section 2962 as OMHD commitments." (*Public Guardian of Contra Costa County v. Eric B.* (2022) 12 Cal.5th 1085, 1095, fn. 3.)

9

from that in the SVPA. For example, for offenders with a mental health disorder, the statute provides with respect to the hearing on the commitment petition, "The court *shall advise the person* of the right to be represented by an attorney and of the right to a jury trial." (Pen. Code, § 2972, subd. (a)(1), italics added.) In addition, "[t]he trial shall be by jury unless waived by both the person and the district attorney." (*Id.*, subd. (a)(2).)

As the California Supreme Court summarized, "The meaning of this text is unambiguous. The court must advise the defendant of the right to counsel and the right to a jury trial. And the court must make this advisement to 'the person,' not to his or her attorney." (*Blackburn*, *supra*, 61 Cal.4th at p. 1123.) The Supreme Court held that the statutory scheme establishes "a default rule that a court must obtain a personal waiver of the defendant's right to a jury trial before holding a bench trial." (*Id.* at p. 1125.) It reached this conclusion as a matter of statutory construction in part because "reading the waiver provision together with the advisement provision, as we must, confirms that the waiver decision belongs to the defendant in the first instance." (*Ibid.*)

In the companion case of *Tran*, the California Supreme Court "address[ed] the meaning of nearly identical language in the statutory scheme for extending the involuntary commitment of a person originally committed after pleading not guilty by reason of insanity (NGI) to a criminal offense." (*Tran*, *supra*, 61 Cal.4th at p. 1162.) Based on the text of the relevant statute, it decided that a trial court, "must advise the NGI defendant personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the defendant unless the court finds substantial evidence that the defendant lacks the capacity to

10

make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision." (*Ibid.*)

The decisions in *Blackburn* and *Tran*, and the statutes they construe, form the basis of Morrison's equal protection challenge to the procedures used here by the trial court in determining the factfinder for his trial. Morrison's counsel initially demanded a jury trial and then subsequently waived the right to jury trial on his behalf. Morrison himself was never addressed by the court on the record with respect to his right to jury trial or his waiver of that right. His trial on the petition was before the court—not a jury. Although Morrison's trial counsel alluded to having Morrison complete a declaration waiving his right to jury trial, no such waiver appears in the record. Morrison asserts that this procedure violated his right to equal protection of the laws.

Under the equal protection clause of the Fourteenth Amendment to the United States Constitution, no state may "deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., 14th Amend.) The general framework for equal protection analysis is well settled. "The degree of justification required to satisfy equal protection depends on the type of unequal treatment at issue. Courts apply heightened scrutiny when a challenged statute or other regulation involves a suspect classification such as race, or a fundamental right such as the right to vote, and accordingly will demand greater justification for the differential treatment. [Citations.] But when a statute involves neither a suspect classification nor a fundamental right, the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' [Citations.] A court applying this standard finds 'a denial of equal protection only if there is no rational relationship between a

11

disparity in treatment and some legitimate government purpose.' " (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).)

Although traditionally courts in California analyzed equal protection claims using a two-step process (*Hardin, supra,* 15 Cal.5th at p. 848), our Supreme Court has clarified that the inquiry usually involves only a single question. "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*Id.* at pp. 850–851.)

Morrison and the Attorney General dispute the standard of review applicable to Morrison's equal protection challenge. Morrison asserts that "challenges involving civil committees—because they affect a significant liberty interest—are subject to strict scrutiny." The Attorney General responds that the appropriate standard is rational basis. The Attorney General relies upon recent appellate decisions that have examined the identical issue and have held that rational basis review applies. (See *People v. Magana* (2022) 76 Cal.App.5th 310, 324 (*Magana*); *People v. Cannon* (2022) 85 Cal.App.5th 786, 797 (*Cannon*), review granted Feb. 15, 2023, S277995.) This issue is currently pending before the California Supreme Court in *Cannon*.

We agree with the Attorney General that the appropriate standard of review is rational basis. We acknowledge the accuracy of Morrison's assertion that California courts have historically used strict scrutiny in

12

evaluating equal protection challenges based on differences among civil commitment schemes. (See, e.g., *In re Smith* (2008) 42 Cal.4th 1251, 1263 ["Under California law, " '[s]trict scrutiny is the appropriate standard against which to measure [equal protection] claims of disparate treatment in civil commitment. [Citations.]" ' . . . 'Because petitioner's personal liberty is at stake, the People concede that the applicable standard for measuring the validity of the statutory scheme now before us requires application of the strict scrutiny standard of equal protection analysis.' "]; see also *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1451 ["The California Supreme Court has long held that under California law, equal protection challenges to involuntary civil commitment schemes are reviewed under the strict scrutiny test because such schemes affect the committed person's fundamental interest in liberty."].)

But simply asserting that a classification affects a "liberty" interest proves too much. The California Supreme Court has cautioned against the application of strict scrutiny based solely on the rationale that " 'personal liberty is a fundamental interest.' " (*People v. Williams* (2024) 17 Cal.5th 99, 123 (*Williams*) [quoting *People v. Olivas* (1976) 17 Cal.3d 236, 251].) The Court has observed that this language "should not be interpreted so broadly as to require strict scrutiny 'whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes, because such statutes always implicate the right to "personal liberty" of the affected individuals.' [Citations.] Indeed, we cautioned that '[a]pplication of the strict scrutiny standard in this context would be incompatible with the broad discretion the Legislature traditionally has been understood to exercise in defining crimes and specifying punishment.' " (*Williams*, at p. 123.)

The SVPA regime undoubtedly affects liberty. In *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*) the California Supreme Court applied heightened scrutiny to an equal protection challenge to a change effected by initiative that altered the SVPA commitment term from two years to indefinite detention. Without explicitly labeling the degree of scrutiny applied, the court stated, "When a constitutional right, such as the right to liberty from involuntary confinement, is at stake, the usual judicial deference to legislative findings gives way to an exercise of independent judgment of the facts to ascertain whether the legislative body 'has drawn reasonable inferences based on substantial evidence.' " (*Id*. at p. 1206.)

The California Supreme Court in *McKee I* did not itself determine whether the differences between the confinement terms of other civil committees and SVP's survived constitutional scrutiny. Instead, our high court remanded the matter "to the trial court to determine whether the People, applying [] equal protection principles . . . can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment. The trial court may, if appropriate, permit expert testimony." (*McKee I, supra*, 47 Cal.4th at pp. 1208–1209, fn. omitted.)[12]

---

[12] Following remand, "the trial court concluded the People met their burden to justify the disparate treatment of SVP's under the standards set forth in [*McKee I*]." (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1330 (*McKee II*).) On appeal from that ruling, the Court of Appeal "conclude[d] the trial court correctly found the People presented substantial evidence to support a reasonable perception by the electorate that SVP's present a substantially greater danger to society than do MDO's or NGI's, and therefore the disparate treatment of SVP's under the Act is necessary to further the People's compelling interests of public safety and humane treatment of the mentally disordered." (*Id*. at pp. 1330–1331.)

14

Although it applied heightened scrutiny to the challenged statutory provisions, the California Supreme Court in *McKee I* did not hold that all equal protection challenges to civil commitment statutes require strict scrutiny. In responding to the dissenting justices, the majority in *McKee I* "strongly disagree[d] with the concurring and dissenting opinion's characterization of our view as being 'that every detail of every civil commitment program is subject to strict scrutiny.' " (*McKee I*, *supra*, 47 Cal.4th at p. 1210, fn. 13.)

Nevertheless, the court rejected the concurring and dissenting opinion's implicit characterization of "the change from a short-term commitment, renewable only if the state carries its burden beyond a reasonable doubt, to an indefinite commitment in which the person committed has the burden of proof" as "merely an alteration of a minor detail of the commitment scheme." (*McKee I*, *supra*, 47 Cal.4th at p. 1210, fn. 13.) These major changes in the SVPA scheme—and the concomitant effects on liberty—called for heightened scrutiny.

By contrast, in *Barrett*, *supra*, 54 Cal.4th 1081, the California Supreme Court applied rational basis review in rejecting an equal protection challenge to the civil commitment scheme for "mentally retarded person[s]" (§ 6500 et. seq) in which the individual does not have the right to be personally informed of his or her right to jury trial. The Court declared that "we have correctly applied the United States Supreme Court's prevailing 'rational basis' standard for analyzing the equal protection claims of mentally retarded persons." (*Barrett*, at p. 1111, fn. 21 [citing *Heller v. Doe* (1993) 509 U.S. 312, 319–321].)

In *Barrett*, our high court highlighted the deference owed to the legislative branch in crafting the details of involuntary commitment schemes.

15

"[A]n equal protection violation does not occur merely because different statutory procedures have been included in different civil commitment schemes. [Citation] Nothing compels the state 'to choose between attacking every aspect of a problem or not attacking the problem at all.' [Citation.] Far from having to 'solve all related ills at once' [citation], the Legislature has 'broad discretion' to proceed in an incremental and uneven manner without necessarily engaging in arbitrary and unlawful discrimination." (*Barrett*, *supra*, 54 Cal.4th at p. 1110.)

In deciding what level of scrutiny to apply to equal protection claims involving nuanced details of civil commitment procedures, recent decisions of the Courts of Appeal have followed *Barrett* and applied rational basis review. (See e.g., *People v. Nolasco* (2021) 67 Cal.App.5th 209, 226 [examining timing renewals for individuals declared dangerous because of a " 'developmental disability' " or " 'mental disease, defect, or disorder' "]; *Magana*, *supra*, 76 Cal.App.5th at p. 324 [stating with respect to the issue presented in this appeal, "[w]e conclude the rational basis analysis of *Barrett* is more applicable [than *McKee I*], even though made in the context of the section 6500 commitment statute, because it involves the analogous situation of the lack of a jury trial advisement and personal waiver under a civil commitment statute"].)

We agree with these decisions' application of the California Supreme Court precedent. We decide rational basis review applies to Morrison's assertion that his equal protection rights were violated by the SVPA's failure to require a personal jury trial advisement and waiver.

This conclusion, in turns, brings us to the appropriate disposition of this appeal. Morrison did not raise his equal protection claim in the trial court, which generally would result in forfeiture of the claim on appeal and

16

affirmance of the judgment. However, both parties urge this court not to apply the forfeiture doctrine but instead to remand the matter to the trial court for a hearing. Given that Morrison's equal protection claim presents a question that is predominantly one of law—and one the California Supreme Court will soon decide—we accede to the parties' request and decline to decide Morrison has forfeited his constitutional claim.

Nevertheless, because Morrison did not raise an equal protection challenge to the trial court's failure to personally advise and secure a waiver of his jury trial rights, there is no development of the relevant issues for us to review. We agree that the matter must be remanded to the trial court.

We emphasize the limited nature of the inquiry on remand. We have decided that Morrison's equal protection challenge is subject to rational basis review. This standard is highly deferential to legislative choices. The burden will be on Morrison—not the People—to show that " 'no rational basis for the unequal treatment is reasonably conceivable.' " (*Hardin*, *supra*, 15 Cal.5th at p. 852; *Williams*, *supra*, 17 Cal.5th at p. 130.)

Moreover, "[t]he underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' [Citation.] Evaluating potential justifications for disparate treatment, a court reviewing a statute under this standard must 'treat the statute's potential logic and assumptions far more permissively than with other standards of constitutional or regulatory review.' [Citation.] 'If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " ' [Citation.] '[T]he logic behind a potential justification need [not] be persuasive or sensible — rather than simply rational.' " (*Hardin*, *supra*, 15 Cal.5th at p. 852.)

17

In other words, "it is well established that an equal protection claim subject to rational basis review does not rise or fall based on whether lawmakers expressly articulated the purpose they sought to achieve with the challenged legislation. [Citation.]  A court conducting such review 'may engage in " 'rational speculation' " as to the justifications for the legislative choice [citation] "whether or not" any such speculation has "a foundation in the record." ' " (*Williams*, *supra*, 17 Cal.5th at p. 128.)

Further, the Legislature need not have acted with a single purpose in crafting the terms of the SVPA.  (See *People v. Allen* (2008) 44 Cal.4th 843, 869 [balancing, under due process principles, the "significant" "private interests at stake in an SVPA proceeding" with "the government's interest in protecting its citizens and treating sexually violent predators pursuant to an efficient procedure"].)  "Legislation is frequently the ' "product of multiple and somewhat inconsistent purposes that led to certain compromises." ' [Citation.]  This is only to be expected, for '[d]eciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice.'  [Citation.]  'Past cases establish that the equal protection clause does not preclude a . . . legislative measure that is aimed at achieving multiple objectives, even when such objectives in some respects may be in tension or conflict.' " (*Hardin*, *supra*, 15 Cal.5th at p. 854; see also *Metropolis Theatre Co. v. Chicago* (1913) 228 U.S. 61, 69 [observing "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations"].)

Rational basis review, unlike strict scrutiny, does not generally require factfinding.  The evidentiary hearing that followed the remand in *McKee I* with the directive to apply heightened scrutiny, for example, took 21 days, involved 19 witnesses, and featured "extensive testimonial and documentary

18

evidence." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1332.) By contrast, in describing the contours of rational basis review, the court in *Hardin* focused on "the apparent motivations underlying the challenged classification, as revealed in the statutory text and history." (*Hardin*, *supra*, 15 Cal.5th at p. 852, fn. 3; see also *FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 315 [stating, with respect to rational basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.)

In the SVPA, unlike in other civil commitment schemes, the Legislature chose to make a court—rather than a jury—the default fact finder at trial. (See *People v. Washington* (2021) 72 Cal.App.5th 453, 467–468 (*Washington*).) The absence in the statute of a requirement that the court personally advise the individual of the right to jury trial reflects this legislative choice. It will be up to the trial court in the first instance to determine on remand whether this scheme has a plausible basis in a legitimate government purpose.

We respectfully disagree with suggestions by some Courts of Appeal in describing the question for trial courts on remand as "the People would need to show . . . that the ability of an SVP to understand a jury trial advisement differs from that of other civil committees." (*Washington*, *supra*, 72 Cal.App.5th at p. 474, fn. 10; see also *Cannon*, *supra*, 85 Cal.App.5th at pp. 799–800, review granted.) As *Hardin* made clear, on rational basis review, the presumption is that a given statutory classification is valid, and the *challenger* must show " 'that no rational basis for the unequal treatment is reasonably conceivable.' " (*Hardin*, *supra*, 15 Cal.5th at p. 852.) Although the " ' "the realities of the subject matter cannot be completely ignored" ' " (*Williams*, *supra*, 17 Cal.5th at p. 125), the limited scope of rational basis

review "ensure[s] that courts act as courts, and allow[s] for the development of policy through the democratic process without putting the Legislature to unwarranted all-or-nothing choices." (*Hardin*, at p. 865.)

The Legislature is entitled to rely on rational bases (for example, the nature or complexity of SVP proceedings) that do not depend on the individual characteristics of SVP's themselves. As the California Supreme Court subsequently stated of its decision in *Hardin,* "we identified the rational basis for the LWOP exclusion there at issue — not in any statutory language or legislative history explicitly explaining the reason for the exclusion — but more broadly in the 'statutory framework.' " (*Williams*, *supra*, 17 Cal.5th at p. 128.) The Legislature may also rely on generalizations about the relevant subject matter. (*Id*. at p. 130 [" 'When conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' "].)

In accordance with dispositions of other Courts of Appeal to have considered this issue, we conditionally affirm the order declaring Morrison to be an SVP and remand the matter to the trial court for Morrison to have an opportunity to raise an equal protection challenge to the Act. If the trial court determines there is an equal protection violation, the court shall vacate the order declaring Morrison to be an SVP and set the matter for a jury trial, unless Morrison provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right.[13]

---

[13] Because it does not appear that the waiver of his jury trial rights was ever discussed on the record with Morrison personally present, we cannot conclude that any failure by the court to personally inform him of that right, would (if error) be harmless. (See *Magana, supra*, 76 Cal.App.5th at p. 327.)

### III.  DISPOSITION

The order declaring Morrison to be a sexually violent predator and committing him to the California Department of State Hospitals for an indeterminate term is conditionally affirmed.  We remand the matter for Morrison to have an opportunity to raise an equal protection challenge to the Sexually Violent Predator Act.  If the trial court determines there is an equal protection violation, the court shall vacate the order declaring Morrison to be a sexually violent predator and set the matter for a jury trial, unless Morrison provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right.

_____
Danner, J.

I CONCUR:

_____
Greenwood, P. J.

I CONCUR IN THE JUDGMENT ONLY:

_____
Bromberg, J.

**H050677**
*People v. Morrison*

Trial Court:        County of Santa Clara

Trial Judge:        Julia L. Alloggiamento

Counsel:            Rudolph G. Kraft, by appointment of the Court of Appeal
                    under the Sixth District Appellate Program, for Defendant
                    and Appellant.

                    Rob Bonta, Attorney General, Lance E. Winters, Chief
                    Assistant Attorney General, Jeffrey M. Laurence, Senior
                    Assistant Attorney General, Donna M. Provenzano,
                    Supervising Deputy Attorney General and Julia Y. Je,
                    Deputy Attorney General, for Plaintiff and Respondent.

**H050677**
*People v. Morrison*